SOUTHERN DISTRICT OF NEW YORK
UNITED STATES DISTRICT COURT

_____

| | |
|---|---|
| TRESTON IRBY | ) |
|            Plaintiff | ) |
| | ) |
| v. | ) |
| | ) VERIFIED |
| RN'D DISTRIBUTION LLC, and | ) COMPLAINT |
| DISTROKID LLC | ) |
|            Defendants | ) |
| | ) |

_____

**JURISDICTION**

1.      Federal Jurisdiction is predicated on diversity of citizenship, pursuant to 28 USC 1332 and federal question jurisdiction.

2.      Personal Jurisdiction is predicated on the New York Long Arm Statute.

3.      Upon information and belief, the amount in controversy exceeds One-Million Dollars ($1,000,000.00).

**PARTIES**

4.      Treston Irby ("Irby") is a resident of Florida  with an address of 7980 North Nob Hill Road, No 203, Tamarac, FL 33321.

5.      Defendant Distro Kid LLC ("Distrokid") is located at 34 Third Ave., No . 183, New York, NY 10003. Distrokid is a Delaware company incorporated in 2018.

6.      Defendant RN'D Distribution LLC ("RND") is upon information and belief, a business entity organized under the laws of the State of Texas with a business address at 2405 Wentworth Street, Houston, TX 77004.

## Franchise Tax Details

- **Franchise Search Results**
- **Public Information Report**

---

**This summary page is designed to satisfy standard business needs. If you need to reinstate or terminate a business with the Texas Secretary of State, you must obtain a certificate specific to that purpose.**

| RN'D DISTRIBUTION, LLC | |
|---|---|
| **Texas Taxpayer Number** | 32014618485 |
| **Mailing Address** | 2405 WENTWORTH ST HOUSTON, TX 77004-6047 |
| **Right to Transact Business in Texas** | ACTIVE |
| **State of Formation** | TX |
| **SOS Registration Status** (SOS status updated each business day) | ACTIVE |
| **Effective SOS Registration Date** | 03/16/2004 |
| **Texas SOS File Number** | 0800317234 |
| **Registered Agent Name** | DARIN GATES |
| **Registered Office Street Address** | 2405 WENTWORTH ST. HOUSTON, TX 77004 |

## **FACTS**

7.      In 2005 Irby filed litigation against N-Depth Entertainment, RND and others, styled, Irby et. al, v. Thompson, et. al., 05-CV-9935 (LTS) ("Lawsuit 1"). Lawsuit 1 related to infringement on the servicemark/ trademark "Hi-Five" for the recording group "Hi-Five". See Amended Complaint at Exhibit 1.

8.      Lawsuit 1 between the parties was reported settled in  July 2009. See Exhibit 2.

9.      The settlement was executed by the parties  in August 2009.  Se Exhibit 3 and 4. Upon settlement, the album  by Hi-Five  titled "The Return" was removed from streaming platforms and all rights to the distribution contract was transferred to Irby. Irby believed the album "The Return" was taken down from all platforms that sold the music after the settlement in 2009.

10.      There was no communication between Irby and RND from 2009 into early 2024.

11.      In 2024, Irby received notification from Spotify that the album "The Return" had received over 5000 streams and a marketing plan was presented to Irby. Without Irby's knowledge or consent, RND  made the decision to re-release "The Return".

12.      Irby was told in 2024, "It has been a week since your release went live" by Spotify. It was clear that RND began to re-distribute  "The Return".

13.    On May 10, 2024, a letter was written to Distrokid  informing the defendant of Irby's contractual rights.  See Exhibit 5.

14.    Distrokid failed to remove the album "The Return" and encouraged or allowed RND to continue to distribute the album to stream in violation of Irby's rights.

15.    RND violated the settlement with  Irby and re-released "The Return" with the servicemark/trademark "Hi-Five".

16.    The actions of RND and Distrokid were intentional and willful and in clear violation of the Lanham Act. The defendants had no right to use the mark "Hi-Five".

17.    The actions of the Defendants have caused confusion among the public and have diluted the trademark/servicemark/tradename Hi-Five. The Defendants are using a similar mark which is likely to cause confusion.

18.    RND has breached its settlement agreement with Irby and has injured Irby in his business.

## COUNT I
## BREACH OF CONTRACT AGAINST
## RND DISTRIBUTION

19.    Plaintiff reallege paragraphs 1-18 above.

20.    In 2009, Irby and the members of Hi-Five settled Lawsuit 1 with RND.

21.    Irby was given the contractual right to "The Return" in the settlement agreement which is an enforceable contract.

22.    In 2024, RND breached the settlement agreement and re-released "The Return".

23.    The actions of RND have harmed Irby in his business.

## COUNT II
## VIOLATION OF FEDERAL TRADEMARK
## LAW AGAINST ALL DEFENDANTS

24.    Plaintiff realleges paragraphs 1-23 above.

25.    Defendants actions are in violation of Lanham Trade-Mark Act, §§ 1 et seq., 32(1)(a), 34, 15 U.S.C.A. §§ 1051-1127.

26.     The mark is distinctive and has been used in commerce.

27.      The Plaintiff is a legal or equitable owner of the mark "Hi-Five".

28.     The Defendants are using a similar mark which is likely to cause confusion among consumers as to the source of the parties respective goods and services.

29.     The Defendants have used the mark in violation of federal law and has caused confusion to the public in the selling, manufacturing and distributing of the album, Hi-Five, The Return.

30.     Due to the Defendants actions, the fake and fraudulent album "The Return" with the fake and fraudulent members, have been confused with the real members of Hi-Five. Plaintiff have been damaged by the actions of the Defendants.

31.     The "real" "Hi-Five" were the vocalist on the albums "Hi-Five" in 1990, "Keep It Goin On " in 1992 and "Faithful" in 1993, released on the major label, Jive Records as indicated below:





32.     The real "Hi-Five" sold millions of  albums and received awards, including a Soul Train Award relating to the LPs "Hi-Five"  "Keep It Goin On "  and "Faithful".

33.     The fake "Hi-Five" as released by RND  on the album, "The Return" contained one member that performed on the 3 previous albums  in the 1990s and violated the rights of Irby.



34.     The actions of the defendants have harmed Irby in his business.

35.     "The Return" was not  the actual return of Hi-Five, rather, it a bootleg attempt to release music under the famous mark "Hi-Five" in violation of Irby's rights.

36.     Irby and  Hi-Five  continues to tour  and on occasion, the audience requests songs performed by the fake "Hi-Five" as released by RND.

37.     The actions of RND and Distrokid violate the Lanham Act.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST DISTROKID

38.     Plaintiffs reallege paragraphs 1-37.

39      In May 2024, Distrokid was made aware of the settlement agreement between Irby and RND.

40.     Distrokid  continued  distributed the album "The Return" despite knowing that RND had no rights to release the album and assigned the rights to Irby.

41.    Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom Lama Holding Co. v Smith Barney Inc., 88 NY2d 413, 424 (1996) citing Israel v. Wood Dolson Co., 1 NY2d 116,120 (1956); see also, NBT Bancorp v Fleet/Norstar Fin. Group, 87 NY2d 614 (1996).

42.    Thus, where there is an  existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior.

43.    In violation of the settlement agreement, and due to the desire to cash in on the use of the famous mark "Hi-Five",  Distrokid encouraged  RND to continue to violate and use the trademark "Hi-Five".  Distrokid  engaged in the unauthorized use of the trademark/servicemark/tradename without the permission of Irby.

44.    Distrokid encouraged RND to continue to breach its settlement agreement with Irby for financial gain.

45.    Such actions by Distrokid are tantamount to tortious interference with contractual relations.

46.    Distrokid has damaged Irby in his business.

**WHEREFORE,**

The Plaintiffs demand,

1.    Judgment on all counts;

2.    An injunction ordering the Defendants to  cease the use trademark/servicemark/tradename Hi-Five;

3.    An award in excess of One-Million Dollars ($1,000,000.00);

4.    An accounting of all monies received by Defendants in the exploitation of the trademark/servicemark/tradename Hi-Five and the album "The Return"; and,

5.    Any other relief this Court deems just and equitable.

**<u>VERIFICATION</u>**

I, Treston Irby assert that the facts in the Verified Complaint are to the best of my knowledge.

_____
TRESTON IRBY

4/23/2025
Dated: April __, 2025

TRESTON IRBY
By His Attorneys,

*Christopher Brown*

_____
Christopher L. Brown
NYS Bar No. 2953891
Brown & Rosen LLC
100 State Street, 9th Floor
Boston,, MA 02109
cbrown@brownrosen.com
617-728-9111

April 23, 2025

# EXHIBIT 1

SOUTHERN DISTRICT OF NEW YORK
FEDERAL DISTRICT COURT

| | |
|---|---|
| TRESTON IRBY, RUSSEL NEAL AND MARCUS SANDERS <br><br> Plaintiffs <br><br> v. <br><br> ANTHONY THOMPSON, N-DEPTH ENTERTAINMENT, COLD FRUNT PRODUCTIONS LLC, ONE STOP DISTRIBUTION, CD UNIVERSE, AMAZON.COM, TOWER RECORDS RN'D DISTRIBUTION LLC, THE MUSICLAND GROUP, INC., RECORD TOWN, INC., WAL-MART STORES, INC., EBONYLIFESTYLES.COM and JOHN DOES 1-4 <br><br> Defendants | ) ) ) ) Civil Action No. ) 05-CV-9935 ) ) ) JUDGE SWAIN ) ) ) AMENDED COMPLAINT ) ) ) ) ) ) ) ) ) ) |

## JURISDICTION

1.     Federal Jurisdiction is predicated on diversity of citizenship, federal trademark law, contractual agreement and location of tort.

2.     Personal Jurisdiction is predicated on the New York Long Arm Statute.

3.     Upon information and belief, the amount in controversy exceeds One-Million Dollars ($1,000,000.00).

## PARTIES

4.     Treston Irby ("Irby") is a resident of Connecticut and resides at 1177 Reservoir Avenue, Bridgeport, Connecticut 06606.

5.     Marcus Sanders (Sanders") is a resident of Texas and resides at 5100 Hawthorne Drive, Apt. 1013, Waco, Texas 76710.

6.     Russell Neal ("Neal") is a resident of Texas and resides at 300 Woerner Road, Apt. 2133, Houston, Texas 77090.

7.     Defendant Anthony Thompson ("Thompson") is upon information and belief, a resident of Texas with a last known business address at 14001 Dallas Parkway Suite 1200, Dallas, Texas 75240.

8.     Defendant Cold Frunt Productions LLC ("Cold") is upon information and belief a business entity organized under the laws of the State of Texas with a business address at 14001 Dallas Parkway, Suite 1200, Dallas, Texas 75240.

9.     Defendant N-Depth Entertainment ("N-Depth") a/k/a, d/b/a "Thompson" or "Cold" , is upon information and belief, a business entity organized under the laws of the state of Texas or a d/b/a of Thompson with a business address at 14001 Dallas Parkway, Suite 1200, Dallas, Texas 75240.

10.     Defendant One Stop Distribution ("Stop") is upon information and belief, a business entity organized under the laws of the State of Texas with a business address at 1716 Boldgett Street, Houston, Texas 77004.

11.     CD Universe ("Universe"), is a business entity organized under the laws of the State of Connecticut with a business address at 101 N. Plains Industrial Road, Wallingford, Connecticut 06492.

12.     Amazon.com ("Amazon") is a business organized under the law of the State of Washington with a business address at 1200 12th Avenue South, Suite 1200 Seattle, Washington 98144.

13.     Tower Records a/k/a towerrecords.com ("Tower") is a business entity organized under the laws of the State of California with a business address at 2500 Del Monte Street, West Sacramento, California 95691.

14.     Defendant RN'D Distribution LLC ("RND") is upon information and belief, a business entity organized under the laws of the State of Texas with a business address at 2405 Wentworth Street, Houston, Texas 77004. Upon information and belief, RND is a business entity that is not in good standing with the State of Texas as of December 5, 2005 as it has not satisfied state tax requirements.

15.     Defendant Wal-Mart Stores, Inc. ("Walmart") is a business entity organized under the laws of Arkansas with corporate headquarters at 702 S.W. 8th Street, Bentonville, Arkansas 72716.

16.     Defendant The Musicland Group, Inc. ("TMG"), is a business entity organized under the laws of Minnesota with its principal place of business at 10400 Yellow Circle Drive Minnetonka, Minnesota 55343 and operates music stores under the name "Sam Goody".

17.     Record Town, Inc., ("Town") is a business entity operated under the laws of New York with a principle place of business at 38 Corporate Circle, Albany, New York 12203 operates the webpage www.fye.com.

18.     Defendant ebonylifestles.com ("Ebony") is a business entity organized under the laws of the state of Texas  and has a principal business address located at 2323 S. Voss Road Ste. 1231, Houston Texas, 77057. Ebony owns and operates the webpage www.ebonylifestyles.com.

19.     John Does 1-4 are members of the new group using the name "Hi-Five."

## FACTS

20.     Plaintiffs reallege paragraphs 1-19.

21.     On or about 1991, Irby, Sanders, Neal and Thompson were members of the popular singing group known as "Hi-Five".  Roderick Clark ("Clark") was also a member of Hi-Five but is not a party to this litigation.

22.     Irby, Sanders, Neal, Clark  and Thompson were under contract to Jive Records/Zomba Recording Corporation ("Zomba")  and made several albums including, "Hi-Five-Self Debut Album" (1990), " Keep It Goin" (1992),"Faithful" (1993) and "Hi-Five Greatest Hits (1994). All the plaintiffs did not appear on every album.

23.     Many master recordings of Hi-Five continue to play on radio stations and continue to sell in their original forms and on compilation albums and soundtracks.  Hi-Five toured the world for several years and sold over two million (2,000,000) albums/singles.  Albums and singles performed by Hi-Five continue to be sold today in various forms.

24.     The trademark/servicemark/tradename Hi-Five is owned by Irby, Sanders, Neal, Clark and Thompson. In the contract dated  May 23, 1991 with  Zomba, Hi-Five and Doorbell Recordings, Inc. ("Doorbell"), Doorbell  assigned the trademark/servicemark/tradename to Irby, Neal, Sanders, Clark and Thompson  in 1991 ("Contract"). (Exhibit "A").

25.     The Contract is governed by the laws of the State of New York and only New York Courts shall have jurisdiction over any controversies arising out of the Contract.

26.     Doorbell registered the trademark/servicemark/tradename with the United States Federal Trademark Office. The registered was subsequently cancelled in 1997 as the parties failed to re-register the mark due to controversies among the members of Hi-Five. (Exhibit "B"). Despite the failure to re-register, the trademark/servicemark/tradename remains owned by Irby, Clark, Sanders, Neal and Thompson.

27.     In or about 1995-1997, Thompson left the group Hi-Five to pursue a solo career. He subsequently signed recording contracts with Giant Records and Bad-Boy Records. Thompson was unable to have success in his solo career similar to the success he had with Hi-Five.

28.     Despite the difficulties within Hi-Five, in or about 1997, Thompson rejoined Hi-Five and began to make music again in order to make, produce a new album. The members appeared in New York City, NY studios and made never released tracks/songs. Thompson was available and performed on the tracks/songs. Subsequent to Thompson's appearance in New York, he again left the group.

29.     Upon information and belief, on or about 1997- 2003, Thompson began forming a new group under the name Hi-Five with Defendant John Does 1-4   and various others, unknowingly and without the consent of Irby, Neal and Sanders.

30.     On or about October 10, 2005, Irby, Neal and Sanders learned that on or about November 2004, Thompson, Cold and N-Depth, through Defendant  Stop manufactured, distributed and sold  a Christmas album for a group identified as Hi-Five containing Thompson and John Does 1-4.  This album was sold without the consent of Irby, Neal and Sanders.

31.     On or about October 10, 2005, Irby, Neal and Sanders learned that all Defendants (except Stop), through Defendant Thompson as owner of N-Depth, and defendant RND, intended to manufacture, distribute and sell a newly created Hi-Five album with John Does 1-4 via RND, and intend to embark on a tour across the United States.  Upon information and belief, the album was scheduled to be released on October 25, 2005, entitled "The Return" of Hi-Five. The album bearing the infringing material was and continues to be  sold by defendants Universe, Amazon, Town, Tower, TMG and Walmart.

32.     Irby, Neal and Sanders have been contacted by friends, family and fans seeking information related to the new unauthorized  Hi-Five album, as they (friends, family and fans) were under the belief that Irby, Neal  and Sanders were involved in the project including, the album, tour and marketing of the group.

33.     A review of the website operated by the Defendants Thompson, Cold and N-Depth, www.hifiveonline.com, illustrates the attempted link of the new unauthorized Hi-Five  with the Hi-Five that enjoyed musical  success on the Zomba recording label.  The website contains information from fans linking the two (2) groups and contains images of all the pre-existing Hi-Five albums including images of Irby, Neal, Clark and Sanders. Irby, Neal and Sanders have no connection to the webpage bearing the trademark/servicemark/tradename operated by the Defendants.

34.     The actions of the Defendants have caused confusion among the public and have diluted the trademark/servicemark/tradename Hi-Five. The Defendants are using a similar mark which is likely to cause confusion.

35.     Defendant Ebony maintains a webpage with the infringe material and invites users to listen to the "Return" on its webpage and draws users to remember Hi-Five for all of the group's records from the 1990s. www.ebonylifestyles.com.

36.     The unauthorized Hi-Five has been performing with various artists including Paul Wall and Ace, causing confusion amongst the public and in violation of the ownership of the trademark/servicemark/tradename Hi-Five.

37.     Upon information and belief, the Defendants have earned or stand to earn millions of dollars in the unauthorized use of the trademark/servicemark/tradename Hi-Five to the detriment of Irby, Neal and Sanders and have diluted intellectual property owned by Irby, Neal and Sanders. The Defendants Stop, N-Depth, RND, Universe, Amazon.com, Town, TMG, Ebony, Walmart and Tower advertise, market, sell and distribute compact discs, tapes, etc. containing the infringing trademark/servicemark/tradename in violation of the rights of Irby, Neal and Sanders.

38.     On October 13, 2005 a cease and desist letter ("demand letter") was sent to Cold and Stop and is attached as Exhibit "C". Copies of the letter has been sent to Amazon, Tower, TMG, Ebony, Universe, Walmart, and RND after October 13, 2005.

39.     To date, the Defendants have not responded to the demand letter.

**COUNT I**
**BREACH OF CONTRACT AGAINST**
**ANTHONY THOMPSON**

40.     Plaintiffs reallege paragraphs 1-39 and 50-56.

41.     Irby, Neal, Sanders, Clark and Thompson own the trademark/servicemark/tradename Hi-Five.

42.     The Contract signed by the members of Hi-Five in 1991 gave ownership of the name to the members and they agreed that they would decide by majority rule how to use the trademark/servicemark/tradename. Thompson had a duty to Irby, Neal, Sanders and Clark to refrain from the use of the mark without their approval as they maintain ownership in the trademark/servicemark/tradename.

43.     Defendant Thompson has breached the Contract and has used the trademark/servicemark/tradename without permission of Irby, Neal and Sanders.

44.     The actions of Thompson have damaged the Plaintiffs.

## COUNT II
## VIOLATION OF FEDERAL TRADEMARK
## LAW AGAINST ALL DEFENDANTS

45. Plaintiffs realleges paragraphs 1-44 and 52-56.

46. Defendants actions are in violation of Lanham Trade-Mark Act, §§ 1 et seq., 32(1)(a), 34, 15 U.S.C.A. §§ 1051-1127.

47. The mark is distinctive and has been used in commerce.

48. The Plaintiffs are the legal or equitable owner of the mark via assignment along with Thompson and Clark.

49. The Defendants are using a similar mark which is likely to cause confusion among consumers as to the source of the parties respective goods and services.

50. The Defendants have used the mark in violation of federal law and has caused confusion to the public in the selling, manufacturing and distributing of the album, Hi-Five, The Return and the Christmas album distributed by Stop.

51. Plaintiffs have been damaged by the actions of the Defendants.

## COUNT III
## VIOLATION OF STATE OF NEW YORK
## TRADEMARK/SERVICEMARK COMMON LAW
## AGAINST ALL DEFENDANTS

52. Plaintiffs realleges paragraphs 1-51.

53. Irby, Clark, Neal, Sanders and Thompson own the trademark/servicemark/tradename Hi-Five.

54. The Defendants has violated New York State law by engaging in the unauthorized use of the trademark/servicemark/tradename without the permission of Irby, Neal and Sanders and identifying themselves within that State of New York as Hi-Five. Thompson and John Does 1-4 appeared on the "Wendy Williams Show on 107.5 WBLS, in New York and various other locations in New York on or about November 4, 2005, diluting the intellectual property owned by Irby, Neal and Sanders. In addition, all Defendants caused the manufacturing, advertising, marketing, selling and distributing of albums containing the trademark/servicemark/tradename Hi-Five in the State of New York to the detriment of the Plaintiffs.

55. Such actions by Thompson and the Defendants have caused public confusion and has devalued the trademark/servicemark/tradename Hi-Five.

6

## COUNT VI
## VIOLATION OF UNFAIR COMPETITION STATUTE
## AGAINST ALL DEFENDANTS

69.     Plaintiffs reallege paragraphs 1-68.

70.     Defendants' action have diluted the trademark/servicemark/tradename Hi-Five.

71.     The public has been and will be confused by Defendants' use of the trademark/servicemark/tradename.

72.     Sony Music ("Sony") has obtained the rights to many songs from the group Hi-Five that enjoyed record sales on Zomba. Sony intends to release "I Like The Way" (the Kissing Game) on December 12, 2005. Sales of this album could benefit Irby, Sanders and Neal.

73.     Defendants' actions have caused unfair competition between the albums released by the Defendants and " I Like The Way" to the detriment Irby, Sanders and Neal.

74.     Defendants action have damaged Irby, Sanders and Neal.

**WHEREFORE,**

The Plaintiffs demand,

1.      Judgment on all counts;

2.      An injunction ordering the Defendants to  cease the use trademark/servicemark/tradename Hi-Five;

3.      An award in excess of One-Million Dollars ($1,000,000.00);

4.      An accounting of all monies received by Defendants in the exploitation of the trademark/servicemark/tradename Hi-Five; and,

5.      Any other relief this Court deems just and equitable.

8

56.    The Defendants' actions have damaged Irby, Neal and Sanders.

## COUNT IV
## VIOLATION OF FEDERAL COMMON LAW
## AGAINST ALL DEFENDANTS

57.    Plaintiffs reallege paragraphs 1-56.

58.    Defendants' actions are in violation of federal trademark common law.

59.    The mark is distinctive and has been used in commerce.

60.    The Plaintiffs are the legal or equitable owner of the mark via assignment.

61.    The Defendants are using a similar mark which is likely to cause confusion among consumers as to the source of the parties respective goods and services.

62.    The Defendants have used the mark in violation of federal law and has caused confusion to the public.

63.    Plaintiffs have been damaged by the actions of the Defendants.

## COUNT V
## REQUEST FOR PRELIMANARY AND
## PERMANENT INJUNCTION
## AGAINST ALL DEFENDANTS

64.    Plaintiffs reallege paragraphs 1-63.

65.    Defendants' action have diluted the trademark/servicemark/tradename Hi-Five.

66.    The public has been and will be confused by Defendants' use of the trademark/servicemark/tradename.

67.    Defendants use of the mark/name has caused irreparable injury to Irby, Neal and Sanders.

68.    Plaintiffs have a strong likelihood on the success on the merits of this action.

7

**PLAINTIFFS' DEMAND TRIAL BY JURY**

TRESTON IRBY, RUSSEL NEAL
AND MARCUS SANDERS
By their Attorneys,

Christopher L. Brown
NYS Bar No. 2953891
Brown & Rosen LLC
Attorneys At Law
77 Franklin St. 3rd Floor
Boston,, MA 02110
617-728-9111

December  28, 2005

**A**



May 23, 1991

**Zomba Recording Corporation**
137-139 W. 25th St., New York, N.Y. 10001
Telephone: (212) 727-0016
Fax: (212) 989-6603

\*Tony Thompson
c/o Mrs. Doris Jordan
1752 Clarkson Road, #D
Richmond, VA 23224

\*Russell Neal
c/o Mrs. Lawyer Neal II
1815 Mahalia
Waco, TX 76704

\*Roderick Clark
c/o Laura Faye Clark
1105 Houston
Waco, TX 76704

\*Marcus Sanders
c/o Yvonne Sanders
918 Faulkner Lane
Waco, TX 76704

\*Treston Irby                    \*(Individually & collectively
c/o Benita Irby                    "High V")
1860 Lafayette Avenue, #2B
Bronx, NY 10473

Doorbell Recordings, Inc.          ("DRI")
c/o Stuart Silfen, Esq.
488 Madison Avenue
9th Floor
New York, NY 10022

Dear Sirs:


We refer to the record agreement between Doorbell Recordings, Inc.
("DRI") and ourselves, as amended, dated August 16 1989 ("the
Agreement") in respect of the recording services of the group p/k/a/
High V and to the inducement letter between High V and ourselves,
dated August 16 1991 ("the Letter") and not withstanding anything to
the contrary contained in the Agreement or the Letter it is hereby
agreed between us, DRI, and High V as follows:

London Office: Zomba Group, Zomba House, 165-167 Willesden High Road, London NW 10 2SG, England, Telephone: 01-459-8899 Telex: 919884 Zomba
European Office: Zomba Holland B.V. Hoefloo 24 1251 EB Laren (N.H.) Holland, Telephone (31) 2153-16314 Fax: (31) 2153-16785
Nashville Office: Zomba Group, 1114 17th Avenue South, Suite 105, Nashville, TN 37212, U.S.A. Telephone: 615 321-4850
L.A. Office: Zomba Group, 6777 Hollywood Blvd., 6th Floor, Hollywood, CA 90028, Telephone (213) 464-7409 Fax: (213) 464-7144

1.   With effect from the date hereof DRI, shall no longer provide
     the services of High V to us under the Agreement and, instead,
     High V shall stand in DRI place as the direct contracting
     party with us under the Agreement. Accordingly, without
     limiting the forgoing, the provisions of the Letter shall
     apply, including, but not limited to, Paragraph 2 of the
     Letter. For the avoidance of doubt any and all obligations on
     our part under the Agreement shall now be obligations to High
     V, including, but not limited to, payments of monies and the
     accounting of royalties.

2.1  High V shall be entitled to the entire royalty for sales of
     records under the Agreement, (with effect from sales of the
     first album entitled "High V" the "First Album"), which, for
     clarity's sake only, stands at a base rate, for top-line sales
     of albums, sold via normal retail channels, in the United
     States, Canada and the U.K, of ███████████ percent of the
     retail price, calculated and computed in accordance with the
     provisions of the Agreement ("the Base Royalty").

2.2  In respect of any independent producers, the Agreement
     currently states that the royalty due to any independent
     producer shall be borne out of the total royalty previously
     due to DRI, and now High V, under the Agreement. With effect
     from the First Album in the event that the combined royalty
     due to all of the independent producers of any album,
     including the First Album, exceeds, cumulatively, in total
     ███████████ percent, then High V shall not bear such excess,
     but instead the excess shall be borne equally between us and
     DRI up to a further ███████ percent, in total ████████████
     each), whilst any royalty in excess of ██████████ percent shall
     be borne by us alone.

3.1  In consideration of the foregoing High V hereby authorizes and
     directs us to make payment to DRI of a royalty ("the Override
     Royalty") out of any and all of the record royalties due to
     High V under the Agreement at a base rate, for sales of
     top-line sales of albums, sold via normal retail channels, in
     the United States, Canada and the U.K.of ███████████ percent of
     the retail price, calculated and computed in accordance with
     the provisions of the Agreement ("the Override Base Royalty
     Rate" or "O.B.R.R."), in respect of the First Album, and the
     balance of albums due to us under the current term of the
     Agreement. The O.B.R.R. shall be computed, calculated,
     determined and adjusted (but not escalated), reduced, accounted
     for and paid on the same basis, in the same manner and from
     the same sources as they are with respect to High V, under the
     Agreement. Without limiting the foregoing DRI's royalties

shall be adjusted pro rata in the same manner as High V, with respect to packaging deductions, foreign royalty payments, singles, mid-price records, record club sales, free goods, non royalty bearing records and less all applicable discounts, taxes, reserves and other deductions as are permitted under the Agreement. By way of further example, but without limitation, with respect to sales of any of the Masters through other than normal retail channels and the sale of records other than albums (including, but not limited to singles, E.P.'s and all foreign sales) DRI royalty hereunder in connection therewith shall be computed at the same ratio to DRI's O.B.R.R.as High V's Basic Royalty under the Agreement.

3.2    1n connection with any exploitation of the Masters for which High V receive a percentage of our net receipts, as opposed to a royalty, then, with respect to such exploitation DRI shall receive, in lieu of the royalty provided in 3.1 above, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ percent of the amount of High V's share of such net receipts from us, under the Agreement.

3.3    We shall pay to DRI, by way of an advance against any and all royalties due, or becoming due to DRI, under the provisions of this paragraph 3,the sum of Fifty thousand ($50,000) Dollars ("the DRI Advance"). As between us, DRI and High V, rather than the DRI Advance being recoupable from High V's royalty, from the outset, we shall debit the DRI Advance to a separate account from the High V royalty accounts, (the "DRI Royalty Account") thus not being a deemed advance to High V, save that if the DRI Advance is not recouped in full after the release of the final album for which royalties are payable to DRI hereunder, then we shall have the right, but not the obligation, to recoup the balance out of royalties due to High V under the Agreement. The DRI Advance shall be payable as to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ percent on the full execution of this Agreement and the balance upon the Effective Date (as hereinafter defined) court approval of this amendment. In the event that such court approval is not forthcoming or refused within three (3) months from the date hereof, then such sums shall be treated as an advance under the Agreement.

4.    We shall upon the full execution of this amending letter, pay by way of an advance against any and all royalties due, or becoming due, to High V under the Agreement, the sum of ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ Dollars (the "High V Advance"). The High V Advance shall be payable as to seventy-five (75%) percent upon the execution of this letter and the balance upon the Effective Date of (as hereinafter defined) court approval of this amendment. In the event that such court approval is not

forthcoming or refused within three (3) months from the date hereof, then such sums shall be treated as an advance under the Agreement.

5.1     With effect from the date hereof paragraph 9 of the Agreement shall be amended so that the share due to High V shall be improved to ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, from ▆▆▆▆▆▆▆▆ percent. Further for the avoidance of doubt any monies due to High V pursuant to paragraph 9 shall be through paid without first being set off against any and all advances or royalties paid by us to High V under the Agreement.

5.2     A merchandising offer has been made by ▆▆▆▆▆▆▆▆ for so called tour merchandising in respect of the current album, entitled "High V", with an advance thereunder of ▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆ Dollars. We and High V agree to accept such offer and upon receipt of the said advance we shall pay over to High V their share of said advance. Thereafter we shall have no further obligation to provide tour support to High V for the upcoming Bud Fest tour, save that the ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Dollars paid to DRI on April 29 1991, as per the amending letter to the Agreement, dated April 29, 1991, shall not be reimbursed to us, but continue to be utilized for the tour, and continue to be treated as an advance under the Agreement. High V confirm and direct us to pay directly to the managers, ▆▆▆▆▆▆▆ percent of any and all merchandising income that is received by or credited to High V, by us, from income received by or credited to us from Winterland pursuant to the aforesaid merchandising agreement.

6.1     In respect of the accounting by us to High V and by us to DRI, on High V's behalf, of the O.B.R.R., respectively, under the Agreement and this letter, the following shall apply:-

(a)         We shall set up a royalty account known being the DRI royalty account for purposes of crediting the DRI O.B.R.R.

(b)         We shall set up a royalty account, known as the High V record royalty account (the "High V Record Royalty Account") for purposes of crediting the High V Record Royalty. Likewise we shall set up a separate royalty account, known as the High V merchandising royalty account (the "High V Merchandising Royalty Account") for purposes of crediting High V merchandising income, which shall not be cross recouped with the High V Record Royalty Account, so that any merchandising income due to High V shall not go to recoup advances paid to High V by us in respect of the making of records or videos.

Docusign Envelope ID: AACFBBCF-0919-4852-9CB6-28067184BC43

(c)    We shall set up a royalty account, known as the First Album record royalty account (the "First Album Record Royalty Account") for purposes of crediting royalties due to High V and DRI in respect of the First Album and Masters therefrom.

6.2    In respect of the First Album only, any and all record royalties due to High V and DRI, at the total royalty rate ▓▓▓▓▓▓▓▓ pursuant to the Agreement and this letter, respectively, shall go to recoup advances paid by us under the Agreement in respect of he First Album ("First Album Advances"). For the avoidance of doubt, First Album Advances shall include, but not be limited to, previously paid monetary advances, Recording Costs, Video Production costs, tour support, including any tour support in respect of the proposed "Bud Fest Tour" or any other proposed tours in support of the First Album.

6.3    Upon the recoupment of the First Album Advances any excess royalties shall be credited to the High V Record Royalty Account and the DRI Record Royalty Account, in the applicable proportions, as per the provisions of this letter and the Agreement ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

6.4    When record royalties are payable to High V and DRI, in respect of the Second Album under the Agreement, being the album next following the First Album (the "Second Album"), if the First Album Advances have not at that time been fully recouped by us, then the balance of First Album Advances which is unrecouped if any, in the First Album Record Royalty Account shall be transferred, in the same proportion as royalties are paid on the First Album ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓, to the High V Record Royalty Account and the DRI Record Royalty Account respectively.

6.5    The O.B.R.R. due to DRI, in respect of the First Album, shall not become payable until such time as the First Album Advances have been fully recouped in the First Album Record Royalty Account, at the gross combined royalty rate under the Agreement, less only the royalty due to any independent producers in accordance with the Agreement. Upon recoupment of the First Album Advances taking place, as aforesaid, then the DRI O.B.R.R. shall be credited to the DRI Record Royalty Account and shall be first set-off against the advances paid by us to DRI hereunder. For the Second Album and beyond the same shall apply as for the First Album, in that, the advances applicable to each album must be first recouped, as aforesaid, before the DRI O.B.R.R. royalty becomes payable which shall then be payable with effect from the first record sold, after only recouping the advances paid by us to DRI pursuant hereto.

However it is specifically agreed that for so long as Vinnie Bell and Robert Ford, or any entity that is owned or controlled by them, remain the managers of High V (i.e. do receive management commissions) that advances for the Second Album and any subsequent albums that are required to be recouped, as aforesaid, before the DRI O.B.R.R. royalty is payable, shall mean any and all advances paid by us under the Agreement to High V, including but not limited to, monetary advances, whether specified or not in the Agreement, Recording Costs, Video Production Costs and tour support. If Vinnie Bell and Robert Ford are no longer the managers of High V (i.e. do not receive management commissions in respect of High V) then, with respect to the next album recorded and released by High V under the Agreement, the advances that are required to be recouped, as aforesaid, before the DRI O.B.R.R. royalty is payable shall only mean Recording Costs and Promo Video Production Costs. Vinnie Bell and Robert Ford confirm that they do not take management commissions on the record royalties due to High V under the Agreement.

6.6     For the avoidance of doubt, recoupment of any and all advances paid to High V shall be recoupable only in accordance with the provisions of the Agreement and this Letter.

6.7     Any and all monies due or payable to High V shall be paid in accordance with the court orders approving the infants contracts previously granted by the Surrogate Court of New York, dated September 4, 1990 (File Numbers 2989-1990 through 2993-90).

7.1     This amendment shall have no force and effect unless and until approved by an order of the Surrogate Court for New York (the "Order"), after notice and hearing, which Order has become final and non-appealable. The date upon which the Order becomes final and non-appealable shall be the "Effective Date". It is agreed and understood that this amendment shall only take effect from the Effective Date and further that it is in the best interest of High V. All members of the group, DRI and ourselves agree to cooperate to the fullest extent in obtaining court approval of the amendment in a prompt manner. Any costs incurred in relation to the court approval of this letter for High V, up to ████████████████████ Dollars shall be advanced by us to High V under the Agreement and debited to the High V Record Royalty Account. Additionally we shall advance to High V under the Agreement another ████████████ ████████ Dollars, which High V direct we pay, on their behalf, to Jeff Storie, Esq. as part payment of legal fees incurred by Jeff Storie to date. Any costs incurred in relation to the court approval of this letter by DRI up to ████████████ ████████ Dollars shall also be advanced by us to DRI and

treated as an advance to DRI, in addition to the DRI Advance under paragraph 3.3 above. DRI hereby authorize and direct us to pay such sums to Stuart Silfen, Esq. Likewise it is hereby acknowledged that for the prior court application in respect of High V that ███████████████ Dollars of the legal costs, which were paid by us will also be treated as an advance to DRI, in addition to the DRI Advance under paragraph 3.3 above, such advances to DRI being debited to the DRI Royalty account.

7.2   All parties hereto confirm and agree that the application to be made to the Surrogate Court of New York to approve this new arrangement, as herein set out, shall request that the court approves this new arrangement (and the Agreement) for a further three (3) years from the date of the court approval of this arrangement, subject always to the rules of the Surrogate Court permitting the same to occur. Each party shall execute any other papers or documents that may be necessary to effect same.

7.3   By way of explanation, Toriano Easley, an original member of High V, was discharged from High V by consent of all parties to hereto. Toriano Easley was replaced by Treston Irby on October 30, 1990 by consent of all the parties hereto. Treston Irby executed an inducement letter dated November 1, 1990 whereby he is bound by the Agreement. (A copy of which is attached.) Additionally, Treston Irby has also signed an amendment to the publishing agreement between High V and Zomba Enterprises, inc. dated August 16, 1989 whereby he is bound by such publishing agreement. (A copy of which is attached.) Treston Irby was born on ███████████ and his social security number is: ███████████ All documents signed by Treston Irby were also signed by his mother, Mrs. Benita Irby.

8.1   In respect of the First Album, both DRI and High V, jointly and severally, confirm that the warranties, representations and covenants given under the Agreement to us, apply, and continue to apply, with effect from the commencement of the Term of the Agreement. With effect for the Second Album onwards such warranties shall be given by High V alone and not DRI.

8.2   High V hereby agrees to indemnify, save and hold us harmless and our respective successors, licensees, assigns, directors, shareholders, officers, employees, agents, attorneys and other representatives from and against any and all liability loss damages, cost and expense (including reasonable attorneys' fees) arising out of or relating to any breach or purported breach by High V of the provision of this Agreement. Provided that such breach must be settled with the indemnitors consent

(not to be unreasonably withheld) or by a court of final approval for such indemnity to apply.

8.3  DRI hereby agrees to indemnify, save and hold us harmless and our respective successors, licensees, assigns, directors, shareholders, officers, employees, agents, attorneys and other representatives from and against any and all liability loss damages, cost and expense (including reasonable attorneys' fees) arising out of or relating to any breach or purported breach by DRI of the provision of this Agreement. Provided that such breach must be settled with the indemnitors consent (not to be unreasonably withheld) or by a court of final approval for such indemnity to apply.

8.4  We hereby agree to indemnify and hold High V harmless and their respective successors, licensees, assigns, directors, shareholders, officers, employees, agents, attorneys and other representatives from and against any and all liability loss damages, cost and expense (including reasonable attorneys' fees) arising out of or relating to any breach or purported breach by us of the provision of this Agreement. Provided that such breach must be settled with the indemnitors consent (not to be unreasonably withheld) or by a court of final approval for such indemnity to apply.

8.5  We hereby agree to indemnify, save and hold DRI harmless and its respective successors, licensees, assigns, directors, shareholders, officers, employees, agents, attorneys and other representatives from and against any and all liability loss damages, cost and expense (including reasonable attorneys' fees) arising out of or relating to any breach or purported breach by us of the provision of this Agreement. Provided that such breach must be settled with the indemnitors consent (not to be unreasonably withheld) or by a court of final approval for such indemnity to apply.

9.  Each party acknowledges that it has been represented by counsel of their own choice throughout all of the negotiations which preceded the execution of this Agreement and in connection with the preparation and execution of this Agreement.

10.  All notices required hereunder or which any party desires to be served hereunder shall be in writing and shall be deemed given when addressed as set forth below and when delivered personally, or by Registered or Certified Letter, return receipt requested, in which case delivery shall be deemed to have occurred when such Registered or Certified Letter is deposited at a United States post office in conformity

hereunder in all cases (other than the sending of royalty
statements). Addresses for notices shall be as follows:


To Doorbell Recordings, Inc.:      At the address above written

With a courtesy copy to:           Stuart Silfen, Esq.
                                   488 Madison Avenue, 9th Floor
                                   New York, NY 10022

To us:                             Zomba Recording Corporation
                                   137-139 West 25th Street
                                   New York, NY 10001
                                   Attn:  Senior, V.P., Business
                                   Affairs

With a courtesy copy to:           Grubman Indursky Schindler
                                     Goldstein & Flax, P.C.
                                   152 West 57th Street, 30th Floor
                                   New York, NY 10019
                                   Attn:  Arthur I. Indursky, Esq.

To High V:                         To each individual member
                                   c/o Jeffrey Storie, Esq.
                                   Decker, Jones, McMackin, McClane,
                                   Hall & Bates
                                   2400 City Center II
                                   301 Commerce Street
                                   Fort Worth, TX 76102

With a courtesy copy to:           Each individual member of High V
                                   at the addresses above written.


Or such other address that is given in conformity with this
clause, provided always that in respect of change of address,
notice is not deemed given until actually received.

11.  This Agreement has been entered into in the State of New York
     and the validity, interpretation and legal effect of this
     agreement shall be governed by the laws of the State of New
     York applicable to contracts entered into and performed
     entirely within the State of New York. The New York courts
     (state and federal) only, will have jurisdiction of any
     controversies regarding this agreement; any action or other
     proceeding which involves such a controversy will be brought
     in those courts in New York County and not elsewhere. Any
     process in any such action or proceeding may among other

methods be served upon the Artists by delivering it or mailing it by delivering the process or mailing it by registered or certified mail directed to the address first above written or such other address as Artist may designate pursuant to this paragraph. Any such delivery or mail service shall be deemed to have the same force and effect as personal service within the State of New York.

12. Whereas the service mark for the name High V has been registered in the name of DRI and DRI have expended certain legal fees in relation thereto. DRI hereby assign to High V the service mark registration in order that High V shall own same and agrees to sign any further documentations that High V may reasonably require in relation thereto. We hereby agree to advance to High V under the Agreement the sum of ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ Dollars, which High V direct us to pay over to DRI to reimburse DRI in full and final settlement for the legal fees previously incurred by DRI in connection with the registration of the service mark. DRI will make payment to the attorney who registered the service mark for the legal fees incurred, in relation thereto. There is a second service mark application being made which shall be High V's responsibility in respect of the legal and other related costs.

Please signify your consent to the above by signing and returning a copy of this Agreement to us.

Yours sincerely,

ZOMBA RECORDING CORPORATION

By: _____

READ and AGREED:

_____
Tony Thompson

_____
Russell Neal

_____
Doris Jordan
Guardian

_____
Evelyn Neal
Guardian

_(signature)_
Roderick Clark

_____
Laura Faye Clark
Guardian

_(signature)_
Marcus Sanders

_(signature)_ Yvonne Sanders
Yvonne Sanders
Guardian

_(signature)_
Treston Irby

_(signature)_
Benita Irby
Guardian

_(signature)_
Doorbell Recordings, Inc.

RECORDS/HIGHV/releaseone051091

B



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Sat Nov 19 04:12:55 EST 2005*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
|---|---|---|---|---|---|---|---|---|---|

| | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |
|---|---|---|---|---|

Logout   Please logout when you are done to release system resources allocated for you.

Start  List At:          OR   Jump  to record:          **Record 2 out of 2**

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet* |
|---|---|---|---|---|

*Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | HI V |
| **Goods and Services** | (CANCELLED) IC 041. US 107. G & S: ENTERTAINMENT SERVICES IN THE NATURE OF A MUSICAL GROUP. FIRST USE: 19900824. FIRST USE IN COMMERCE: 19900824 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Design Search Code** | |
| **Serial Number** | 74001614 |
| **Filing Date** | November 16, 1989 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | April 24, 1990 |
| **Registration Number** | 1641774 |
| **Registration Date** | April 16, 1991 |
| **Owner** | (REGISTRANT) **DOORBELL** RECORDINGS, INC. CORPORATION NEW YORK APT. 314 142-05 ROOSEVELT AVENUE FLUSHING NEW YORK 11354 |
| **Attorney of Record** | DAVID GOLDBERG |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Cancellation Date** | October 20, 1997 |

Docusign Envelope ID: AACFBBCF-0919-4852-9CB6-28067184BC43



|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Thank you for your request. Here are the latest results from the **TARR web server.**

This page was generated by the TARR system on 2005-11-21 11:23:16 ET

**Serial Number:** 74001614

**Registration Number:** 1641774

**Mark (words only):** HI V

**Standard Character claim:** No

**Current Status:** Registration canceled under Section 8.

**Date of Status:** 1997-10-20

**Filing Date:** 1989-11-16

**Transformed into a National Application:** No

**Registration Date:** 1991-04-16

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 900 -File Repository (Franconia)

**Date In Location:** 1991-05-06

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. DOORBELL RECORDINGS, INC.

**Address:**
DOORBELL RECORDINGS, INC.
APT. 314 142-05 ROOSEVELT AVENUE
FLUSHING, NY 11354
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** New York

---

## GOODS AND/OR SERVICES

**International Class:** 041
ENTERTAINMENT SERVICES IN THE NATURE OF A MUSICAL GROUP

**First Use Date:** 1990-08-24
**First Use in Commerce Date:** 1990-08-24

**Basis:** 1(a)

---

## ADDITIONAL INFORMATION

---

(NOT AVAILABLE)

---

## MADRID PROTOCOL INFORMATION

---

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

---

1997-10-20 - Canceled Section 8 (6-year)

1991-04-16 - Registered - Principal Register

1991-02-11 - Allowed for Registration - Principal Register (SOU accepted)

1991-02-11 - Case file assigned to examining attorney

1991-02-06 - Statement of use processing complete

1991-01-13 - Amendment to Use filed

1990-07-17 - Notice of allowance - mailed

1990-04-24 - Published for opposition

1990-03-24 - Notice of publication

1990-01-15 - Approved for Pub - Principal Register (Initial exam)

1990-01-18 - Case file assigned to examining attorney

---

## CORRESPONDENCE INFORMATION

---

**Correspondent**
DAVID GOLDBERG (Attorney of record)

DAVID GOLDBERG
COWAN, LIEBOWITZ & LATMAN, P.C.
1133 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-6799

Docusign Envelope ID: AACFBBCF-0919-4852-9CB6-28067184BC43

c

# BROWN & ROSEN LLC

Attorneys At Law
77 Franklin Street, 3rd Floor
Boston, MA 02110
617-728-9111 (T)
617-695-3202 (F)
www.brownrosen.com

October 13, 2005

One Stop Distribution
1716 Blodgett St.
Houston TX 77004
Fax: (713) 807-0122

Cold Frunt Productions LLC
14001 Dallas Parkway Suite 1200
Dallas, TX 75240
Fax: (972) 934-6508

Re: Hi-Five

Gentlemen:

You are hereby demanded to cease and desist the use of the name Hi-Five on all phonographs/DVD/CDs immediately. I represent the owners of the name "Hi-Five" Treston Irby and Marcus Sanders. My clients have recently learned of the illegal use of the name Hi-Five on the Christmas album of 2004, the soon to be released album "The Return", and the tour that has been announced. Your actions are in violation of federal and state law and you have devalued the use of the trademark/name owned by my clients.

Your actions have injured my clients and have caused public confusion. I hereby demand an accounting of all revenues derived and/or related to your illegal use of the name Hi-Five which includes, CD/DVD sales, concert revenue and recording contracts. If you have any questions, do not hesitate to contact me.

Regards,

Christopher Brown, Esq.

# EXHIBIT 2

# BROWN & ROSEN LLC

Attorneys At Law
77 Franklin Street, 3rd Floor
Boston, MA 02110
617-728-9111 (T)
617-695-3202 (F)
www.brownrosen.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JUL 2 1 2009

July 20, 2009

Via Facsimile Only
At 212-805-0426

Honorable Laura Taylor Swain
United States District Court Southern District of New York
40 Centre Street, Room 1205
New York, New York 10007-1581

# MEMO ENDORSED

**Re: TRESTON IRBY, ET AL v. ANTHONY THOMPSON, ET AL;**
**Case No. 05-CV-9935**

Dear Judge Swain:

I write to inform you that the Plaintiffs and RND Distribution have reached a settlement in principle. We will be filing a Notice of Dismissal very soon. I hereby request an extension until August 10, 2009 to file additional documents relating to the Order to Show Cause and potential settlement. Settlement with RND Distribution would effectively end this case and I do not anticipate the need to file any additional documents.

Regards,

Christopher Brown

Cc: Allena Wright at 713-752-2812

The extension request is granted, and a 30-day order will be entered.

SO ORDERED.

NEW YORK, NY

LAURA TAYLOR SWAIN
July 20, 2009 UNITED STATES DISTRICT JUDGE

# EXHIBIT 3

## GENERAL RELEASE AND SETTLEMENT AGREEMENT

**RELEASING PARTIES:**                    Treston Irby, Russell Neal, Marcus Sanders
                                          their agents ("Irby")

**RELEASED PARTIES:**                     RND Distribution LLC ("RND"),
                                          CD Universe, Record Town,
                                          Ebonylifestyles.com, and all parties with
                                          existing contractual agreements with RN'D
                                          Distribution

**WHEREAS,** the **RELEASING PARTIES** have asserted claims for damages

against RND in the action entitled <u>Irby, et al v. Thompson, et al,</u> United States Southern

District of New York, Federal Court, Case No. 05-9935;

**WHEREAS,** the **RELEASED PARTIES** and Irby wish to resolve all claims that

may exist between including but not limited to all pending litigation;

**NOW, THEREFORE,** in consideration of the good and value indentified below:

1) All of RND's contractual rights relating to the Pressing/Distribution contract
   signed by RND and N-Depth Entertainment be assigned to  Irby;

2) RND reserves the right to enforce the indemnification clause within the Pressing
   Distribution Contract executed by RND and N-Depth Entertainment; and,

3) A notice of dismissal will be filed terminating the claims against RND
   Distribution, CD Universe, Record Town, Ebonylifestyles.com, and all parties with
   existing contractual agreements with RN'D Distribution, LLC as it relates to this pending
   cause of action entitled <u>Irby, et al v. Thompson, et al,</u> United States Southern
   District of New York, Federal Court, Case No. 05-9935.

For other good and valuable consideration paid to the **RELEASING PARTIES** for or on

behalf of the **RELEASED PARTIES,** the receipt and sufficiency of which is hereby

acknowledged, the **RELEASING PARTIES** hereby remises, releases and covenants not

to sue, and forever discharges the **RELEASED PARTIES** from any and all claims,

debts, demands, actions, causes of action, suits, accounts, covenants, contracts,

agreements and liabilities in law and in equity, known and unknown, from the beginning of the time until the date hereof, including without limitation, those arising out of, in connection with or related to the action entitled Irby, et al v. Thompson, et al, United States Southern District of New York, Federal Court, Case No. 05-9935.

For other good and valuable consideration paid to the **RELEASED PARTIES** for or on behalf of the **RELEASING PARTIES**, the receipt and sufficiency of which is hereby acknowledged, the **RELEASED PARTIES** hereby remises, releases and covenants not to sue, and forever discharges the **RELEASING PARTIES** from any and all claims, debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements and liabilities in law and in equity, known and unknown, from the beginning of the time until the date hereof, including without limitation, those arising out of, in connection with or related to the action entitled Irby, et al v. Thompson, et al, United States Southern District of New York, Federal Court, Case No. 05-9935.

It is further, specifically understood and agreed as follows:

1. Only Irby shall have the right to enforce any contractual provision between RND and N-Depth Entertainment.

2. Irby can continue the litigation against other defendants.

3. The actions of the **RELEASING PARTIES** and **RELEASED PARTIES** in execution, acceptance and performance of this Agreement are not admissions by or on behalf of any **RELEASING PARTIES** or **RELEASED PARTIES;**

2

4.    The **RELEASING PARTIES** are represented by counsel of their own
      choice in this matter and the **RELEASING PARTIES** have been
      informed by their respective counsel of the intent and effect of this
      Release on their rights and obligations and on the rights and obligations of
      the **RELEASED PARTIES**;

5.    This Release and Agreement is entered into in the State of New York and
      shall be construed and interpreted in accordance with its laws;

6.    The **RELEASING PARTIES** agree to keep confidential this Agreement
      and the amount paid on behalf of the **RELEASED PARTIES** except such
      disclosure as may be required pursuant to a valid court order, in
      connection with the preparation of tax returns or financial statements, or in
      connection with seeking legal or other professional advice.

7.    The **RELEASING PARTIES** agrees to voluntarily withdraw or dismiss
      Irby, et al v. Thompson, et al, United States Southern District of New
      York, Federal Court,  Case No. 05-9935 , with prejudice as it pertains to
      the **RELEASED PARTIES**.

**WITNESS** our hands and seals this _____ day of August, 2009.

_____

Treston Irby

_____

Russell Neal

Marcus Sanders

RND Distribution LLC

3

# EXHIBIT 4

4.    The **RELEASING PARTIES** are represented by counsel of their own

choice in this matter and the **RELEASING PARTIES** have been

informed by their respective counsel of the intent and effect of this

Release on their rights and obligations and on the rights and obligations of

the **RELEASED PARTIES**;

5.    This Release and Agreement is entered into in the State of New York and

shall be construed and interpreted in accordance with its laws;

6.    The **RELEASING PARTIES** agree to keep confidential this Agreement

and the amount paid on behalf of the **RELEASED PARTIES** except such

disclosure as may be required pursuant to a valid court order, in

connection with the preparation of tax returns or financial statements, or in

connection with seeking legal or other professional advice.

7.    The **RELEASING PARTIES** agrees to voluntarily withdraw or dismiss

Irby, et al v. Thompson, et al, United States Southern District  of New

York, Federal Court,  Case No. 05-9935 , with prejudice as it pertains to

the **RELEASED PARTIES**.

**WITNESS** our hands and seals this 12th day of August, 2009.

Treston Irby

Russell Neal

Marcus Sanders

RND Distribution LLC

3

# EXHIBIT 5

# BROWN & ROSEN LLC

Attorneys At Law
100 State Street, Suite 900
Boston, MA 02109
617-728-9111 (T)
www.brownrosen.com

May 10, 2024

Copyright Agent
DistroKid LLC
34 Third Ave #183
New York, NY 10003
Email: legal@distrokid.com

Re:    Hi-Five- The Return
       Irby, et. al. v. Thompson, et. al., SDNY Civil Action No. 05-CV-9935

Dear Distrokid:

This Office is legal counsel to Treston Irby ("Irby"). Pursuant to the above referenced legal action. Irby obtained all legal rights to the album -Hi-Five: The Return. See Exhibit A.  Distrokid is illegally distributing the album with a third party and has been doing so for over 10 years.   All funds related to Hi-Five: The Return must be forwarded to my client. The release appears  at Exhibit B.

You are hereby demanded to cease and desist the release and send all monies to my office.

Sincerely,

*Christopher Brown*
Christopher Brown

# EXHIBIT A

Docusign Envelope ID: AACFBBCF-0919-4852-9CB6-288671848C43
08/13/2009 13:51 Case 1:713-52935914 Document 1 RNB DISTRIBUTION Page 49 of 54 PAGE 01

AUG/13/2009/THU 01:37 PM   SAVOY HAMM COX PRADI      FAX No. 713 752 2812      P. 001

## GENERAL RELEASE AND SETTLEMENT AGREEMENT

**RELEASING PARTIES:**          Treston Irby, Russell Neal, Marcus Sanders
                                their agents ("Irby")

**RELEASED PARTIES:**           RND Distribution LLC ("RND"),
                                CD Universe, Record Town,
                                Ebonylifestyles.com, and all parties with
                                existing contractual agreements with RN'D
                                Distribution

**WHEREAS,** the **RELEASING PARTIES** have asserted claims for damages

against RND in the action entitled <u>Irby, et al v. Thompson, et al</u>, United States Southern

District of New York, Federal Court, Case No. 05-9935;

**WHEREAS,** the **RELEASED PARTIES** and Irby wish to resolve all claims that

may exist between including but not limited to all pending litigation;

**NOW, THEREFORE,** in consideration of the good and value indentified below:

1) All of RND's contractual rights relating to the Pressing/Distribution contract
   signed by RND and N-Depth Entertainment be assigned to Irby;

2) RND reserves the right to enforce the indemnification clause within the Pressing
   Distribution Contract executed by RND and N-Depth Entertainment; and,

3) A notice of dismissal will be filed terminating the claims against RND
   Distribution, CD Universe, Record Town, Ebonylifestyles.com, and all parties with
   existing contractual agreements with RN'D Distribution, LLC as it relates to this pending
   cause of action entitled <u>Irby, et al v. Thompson, et al</u>, United States Southern
   District of New York, Federal Court, Case No. 05-9935.

For other good and valuable consideration paid to the **RELEASING PARTIES** for or on

behalf of the **RELEASED PARTIES,** the receipt and sufficiency of which is hereby

acknowledged, the **RELEASING PARTIES** hereby remises, releases and covenants not

to sue, and forever discharges the **RELEASED PARTIES** from any and all claims,

debts, demands, actions, causes of action, suits, accounts, covenants, contracts,

agreements and liabilities in law and in equity, known and unknown, from the beginning
of the time until the date hereof, including without limitation, those arising out of, in
connection with or related to the action entitled Irby, et al v. Thompson, et al, United
States Southern District of New York, Federal Court, Case No. 05-9935.

   For other good and valuable consideration paid to the **RELEASED PARTIES**
for or on behalf of the **RELEASING PARTIES**, the receipt and sufficiency of which is
hereby acknowledged, the **RELEASED PARTIES** hereby remises, releases and
covenants not to sue, and forever discharges the **RELEASING PARTIES** from any and
all claims, debts, demands, actions, causes of action, suits, accounts, covenants, contracts,
agreements and liabilities in law and in equity, known and unknown, from the beginning
of the time until the date hereof, including without limitation, those arising out of, in
connection with or related to the action entitled Irby, et al v. Thompson, et al, United
States Southern District of New York, Federal Court, Case No. 05-9935.

   It is further, specifically understood and agreed as follows:

1.    Only Irby shall have the right to enforce any contractual provision
      between RND and N-Depth Entertainment.

2.    Irby can continue the litigation against other defendants.

3.    The actions of the **RELEASING PARTIES** and **RELEASED PARTIES**
      in execution, acceptance and performance of this Agreement are not
      admissions by or on behalf of any **RELEASING PARTIES** or
      **RELEASED PARTIES**;

2

4.    The **RELEASING PARTIES** are represented by counsel of their own

choice in this matter and the **RELEASING PARTIES** have been

informed by their respective counsel of the intent and effect of this

Release on their rights and obligations and on the rights and obligations of

the **RELEASED PARTIES**;

5.    This Release and Agreement is entered into in the State of New York and

shall be construed and interpreted in accordance with its laws;

6.    The **RELEASING PARTIES** agree to keep confidential this Agreement

and the amount paid on behalf of the **RELEASED PARTIES** except such

disclosure as may be required pursuant to a valid court order, in

connection with the preparation of tax returns or financial statements, or in

connection with seeking legal or other professional advice.

7.    The **RELEASING PARTIES** agrees to voluntarily withdraw or dismiss

Irby, et al v. Thompson, et al, United States Southern District of New

York, Federal Court, Case No. 05-9935 , with prejudice as it pertains to

the **RELEASED PARTIES**.

**WITNESS** our hands and seals this _____ day of August, 2009.

_____
Treston Irby

_____
Russell Neal

Marcus Sanders

RND Distribution LLC

3

# EXHIBIT B





1:49

Inbox    Discovery Mode: Set...

## Your tracks are eligible for a Discovery Mode campaign

Discovery Mode is a new tool that helps you reach new listeners and grow your fanbase, with no upfront budget required. When Discovery Mode is turned on for a track, it increases the likelihood that songs reach listeners in Radio & Autoplay.

We previously communicated that this year we are expanding Discovery Mode to Spotify Mixes. On January 3, we began our first phase of the expansion by bringing Discovery Mode to Daily Mixes.

Now, we are excited to share that we will be continuing our expansion by making Discovery Mode available in Artist Mixes on March 1st. This means your March campaigns will be active in Spotify Radio, Autoplay, Daily Mixes, and Artist Mixes, which you should consider when comparing campaign reports month over month, as your campaigns may reach more listeners in more contexts.

### Set up your campaign in Spotify for Artists

You can now set up next month's campaign **for the below artists and their tracks distributed through eligible licensors.**

To do so, please log into the Spotify for Artists account for each of the below artists and click "Set up Campaign" in the Discovery Mode Campaigns tab. **You can also click each artist name in the table below to be brought directly to their Campaigns tab.**

| Eligible artist | Licensor tracks eligible |
|---|---|
| Hi-Five | DistroKid |

*Please note, tracks you selected last month will not automatically roll over into next month's campaign. In order to include tracks in a campaign next month, you will need to complete the campaign submission process this month.*

### Campaign Setup Timeline

*This month, campaign setup will close at 12 am UTC on Feb (8pm EST on Feb )*

## Key dates and steps: